IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID J. WESTBROOK, JR., ) | |
| ) | 8:04CV334 |
| Plaintiff, ) | |
| ) | MEMORANDUM AND ORDER |
| vs. ) | |
| ) | |
| CITY OF OMAHA, ) | |
| a municipal corporation, ) | |
| ALAN PEPIN, TIM CAVANAUGH, ) | |
| JAMES ROBERTS and CECIL HICKS, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on a motion for summary judgment (Filing No. 28) filed by defendants, City of Omaha, Alan Pepin, Tim Cavanaugh, James Roberts and Cecil Hicks, and on an amended motion for partial summary judgment (Filing No. 31) filed by plaintiff David J. Westbrook, Jr.  The court having considered the motions, the responses, the replies, the record and relevant law, now determines that defendants' motion for summary judgment should be granted, and that plaintiff's amended motion for partial summary judgment should be denied.[1]  The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  **See** Filing No. 59.

**FACTS**

In March of 1999, the City of Omaha hired David J. Westbrook, Jr. (Westbrook) as a police officer.  On February 11, 2003, while on patrol, Westbrook responded to a call to a supermarket in Omaha, Nebraska and arrested Darrel Williams (Williams) for shoplifting. Westbrook transported Williams to the Omaha police station and booked him for shoplifting

---

[1] The plaintiff originally filed a motion for partial summary judgment, Filing No. 24, but subsequently amended that motion with Filing No. 31.  The amended motion does not change the plaintiff's original motion for partial summary judgment in any way.  It only seeks to clarify that the original motion pertains to the plaintiff's third cause of action, namely, his claim that defendants violated his Fourth Amendment rights when they obtained his bank records.  Thus, the plaintiff's original motion for partial summary judgment, Filing No. 24, was rendered moot.

and possession of illegal drugs. On or about April 3, 2003, Williams filed a citizen's complaint with the City of Omaha Public Safety Auditor alleging that approximately $106.00 had been taken by Westbrook and never returned to him. Omaha Chief of Police, Alan Pepin, directed Lieutenant Tim Cavanaugh, commander of the City of Omaha Police Department Internal Affairs Unit, to conduct an internal affairs investigation of Williams' complaint. Lieutenant Cavanaugh assigned the investigation to Sergeant James Roberts. During this same period of time, the Omaha Police Department conducted a criminal investigation, which Sergeant William Rock headed up. On April 18, Deputy City Attorney Mike Tesar made a preliminary decision not to prosecute Westbrook.

On July 25, 2003, Sergeant Roberts interviewed Westbrook as part of the internal investigation. **See** Filing No. 25, Ex. 7. At this interview, Sergeant Roberts told Westbrook that he had evidence which indicated that Westbrook had gambled $120.00 at a casino in Iowa on February 12, 2003, a day after he arrested Williams. Sergeant Roberts asked Westbrook how much cash he normally carried and how much cash he carried when he gambled. Westbrook replied that he usually carried twenty to forty dollars but when he went to the casinos, he typically carried one to two hundred dollars. Westbrook indicated that when he went to the casinos, he would "stop at a cash box" to withdraw money. On August 14, 2003, Sergeant Roberts ordered Westbrook to turn over his bank records. Lieutenant Cavanaugh and Sergeant Roberts prepared the written order and Chief Pepin approved and initialed it. Westbrook complied with the order and produced the bank records which showed no withdrawals were made on the dates in question. The parties agree that Sergeant Rock did not receive these bank records for the criminal investigation. Filing No. 27, Pl. Brief, at 14; Cavanaugh Depo. at 66:18-67:23. Sometime in October, 2003, Marty Conboy, Chief City Prosecutor reviewed the case and again decided not to prosecute Westbrook. Nothing from the internal affairs investigation file was sent to Mr. Conboy. Filing No. 25, Ex. 20. As part of the investigation, Sergeant Roberts also interviewed Darrel Williams, other individuals who were present at the time of the initial arrest, and pursued other leads in the investigation. **See** Filing No. 30 Cavanaugh Aff., Ex. D. Officer Becker, John Carlin and a Deputy County Sheriff all indicated that they believed Westbrook had some money on him at the time of his arrest.

On or about October 20, 2003, Westbrook received a letter from Chief Pepin, recommending his dismissal from the Omaha Police Department. The letter also notified Westbrook that he had been suspended with pay pending a pre-termination hearing. On October 31, 2003, Cecil Hicks, City of Omaha Personnel Director, conducted Westbrook's pre-termination hearing. On November 19, 2003, Hicks recommended dismissal of Westbrook. On December 1, 2003, Chief Pepin terminated Westbrook's employment. Westbrook appealed his termination in front of an arbitrator on April 7, 2004. **See** Filing 30, Warren's Aff., Ex. C. The arbitrator issued a written opinion finding that the City had good cause to terminate Westbrook.

On July 22, 2004, Westbrook filed this lawsuit claiming that defendants' actions violated his constitutional rights under the Fourth and Fifth Amendments. Specifically, Westbrook claimed that: (1) he did not receive an adequate pre-termination hearing; (2) he did not receive an adequate post-termination hearing to clear his name; and (3) defendants violated his constitutional rights when they obtained his bank records. Westbrook claims that he has suffered damages as a result of defendants' actions. Westbrook has filed a motion for summary judgment on the issue of whether defendants violated his Fourth Amendment rights when they obtained his bank records. Defendants have responded, arguing that they did not violate his Fourth Amendment rights. They ask that Westbrook's motion be denied. They have also filed a motion for summary judgment with respect to this issue and with respect to Westbrook's remaining claims. Defendants contend that they did not violate Westbrook's constitutional rights in any way. They claim there are no genuine issues of material fact with respect to any of Westbrook's claims and that summary judgment should be granted in their favor. Westbrook opposes the defendants' motion.

## ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." **See** Fed. R. Civ. P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. ***Anderson v. Liberty Lobby, Inc.,*** 477 U.S. 242, 248 (1986). In order to determine which facts are material, courts should look to the substantive law in a dispute and identify the facts which are critical to the outcome. *Id.* The movant bears the burden of establishing that no genuine issue of material fact exists. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. *Id.* Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. *Id.* To successfully oppose the motion for summary judgment, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. *Id.*

**B.    Westbrook's pre-termination hearing and post-termination hearing**

The defendants have moved for summary judgment on Westbrook's claims that he did not receive: (1) an adequate pre-termination hearing; or (2) an adequate post-termination hearing to clear his name. Defendants contend that Westbrook obtained both adequate pre-termination and post-termination hearings. They claim that there are no genuine issues of material fact with respect to that, thus, they are entitled to summary judgment. The court agrees.

It is undisputed that Westbrook had a constitutionally protected property right in his employment as a police officer. ***Cleveland Bd. Of Educ. v. Loudermill***, 470 U.S. 532, 542 (1985). Therefore, his deprivation of that employment "must be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* The Supreme Court in ***Loudermill*** divides procedural process claims into three stages. **See *Krentz v. Robertson Fire Prot. Dist***, 228 F.3d 897, 902-03 (8th Cir. 2000) (**citing and quoting** ***Loudermill***, 470 U.S. at 544, 546-48). "Initially, an employee receives notice that he will be terminated, and

4

he is given an opportunity to respond: that is 'pretermination process.'" *Id.* "Then, the employer actually fires the employee." *Id.* "Finally, in the third stage, an employee has an opportunity to receive some measure of post-termination process, usually a hearing with heightened procedural safeguards." *Id.* "*Loudermill* instructs us that extensive post-termination proceedings may cure inadequate pretermination proceedings." *Id.* The Eighth Circuit has stated that "although a public employee should receive a hearing, the hearing 'need not be elaborate.'" *Id.* "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.*

In this case, it is undisputed that Westbrook received notice of the charges against him. He received a letter from Chief Pepin, recommending his dismissal from the Omaha Police Department. Complaint at ¶ 15 and Filing No. 30, Ex. A. That letter clearly explained the charges against Westbrook, i.e., that Williams accused him of stealing money. The letter also aprised Westbrook of a pre-termination hearing or of an opportunity to present his side of the story. Westbrook, however, asserts that he was not apprised of the evidence against him. The court disagrees for two reasons. First, prior to the pre-termination hearing and as part of the noncriminal work-related misconduct investigation, defendants asked Wesbrook to submit his bank records. Second, and more important, Westbrook had a pre-termination hearing at which he appeared with counsel. At that hearing, Westbrook had an opportunity, through counsel, to object or question any evidence against him. Furthermore, the court has reviewed the transcript of the pre-termination hearing and finds that Westbrook had a full opportunity to present his side of the story. **See** Filing No. 30, Ex. B. Westbrook's claim that he did not receive an adequate pre-termination hearing is without merit.

As indicated above, Westbrook also claims that his right to procedural due process was violated because he did not receive an adequate post-termination hearing to clear his name. The court again disagrees. When a government employee is terminated in conjunction with a "charge that might seriously damage his standing and associations in his community," the employee is entitled to due process to protect his liberty interest in his professional reputation. ***Bd. of Regents v. Roth***, 408 U.S. 564, 573 (1972). Due process

is implicated if the public employee's termination is accompanied by publication of stigmatizing reasons for his termination that might impair his future employment opportunities. **See** ***Shleck v. Ramsey County***, 939 F.2d 638, 642 (8th Cir. 1991) (citations omitted). "The requisite stigma has generally been found when an employer has accused an employee of dishonesty, immorality, criminality, racism and the like." ***Buchholz v. Aldaya***, 210 F.3d 862, 866 (8th Cir. 2000) (**quoting** ***Winegar v. Des Moines Indep. Cmty. Sch. Dist.***, 20 F.3d 895, 899 (8th Cir. 1994)). In order for the plaintiff to successfully claim a violation of due process, he must: (1) show that his employer made stigmatizing statements about him; (2) prove these stigmatizing statements were made public; and (3) show the stigmatizing statements were made at the time of his dismissal. **See** ***Patterson v. City of Utica***, 370 F.3d 322 (2d Cir. 2004) (citations omitted). If a plaintiff successfully meets these three prongs, "due process requires that as a remedy he be given a post-deprivation opportunity to clear his name." ***Id.;*** ***Shleck****,* 939 F.2d at 642.

Here, Westbrook has not provided any evidence that defendants made any stigmatizing statements about him to the public at any time. Westbrook asserts that between October 22 and October 31, 2003, information regarding his suspension and termination appeared in the local media. However, Westbrook does not indicate who made those statements. Furthermore, Westbrook does not provide any evidence of the content of those statements. The only evidence Westbrook provides with respect to this claim is the assertion that information regarding his termination appeared in the local media. That is not enough to sustain a claim for a violation of procedural due process. However, even if Westbrook had successfully met the prongs to claim a violation of due process, the record indicates that he was given a post-termination hearing. **See** Filing No. 30, Ex. C. This hearing was extensive and gave Westbrook every opportunity to clear his name. Westbrook's claim that he did not obtain an adequate post-termination hearing is without merit.

**C.    Defendants' request of Westbrook's bank records**

In the plaintiff's third claim for relief, the plaintiff alleges the defendants Chief Pepin, Lieutenant Cavanaugh and Sergeant Roberts violated the plaintiff's constitutional rights

under the Fourth and Fourteenth Amendments by effecting an unreasonable search and seizure of personal bank statements. Additionally, the plaintiff alleges the City is liable because Lieutenant Cavanaugh and Sergeant Roberts derived their authority the City's written procedure, for which Chief Pepin was a final policy maker. Specifically, the plaintiff alleges the violation occurred when these defendants ordered the plaintiff to turn over his bank statements upon pain of discipline or termination. In fact, on August 14, 2003, Sergeant Roberts ordered Westbrook to turn over his bank records. Lieutenant Cavanaugh and Sergeant Roberts prepared the written order and Chief Pepin approved and initialed it. Westbrook complied with the order and produced the bank records. The order was based on a City policy which requires police officers to provide these types of records during the course of an internal affairs investigation. **See** Filing No. 30, Cavanaugh's Aff. at ¶¶ 5-6 and Ex. E.[2]

The plaintiff seeks summary judgment on the issue of whether a constitutional violation (seizure of the records) proximately caused his dismissal from the Omaha Police Department. In contrast, the defendants contend the plaintiff's bank records were reasonably seized. Further, the individual defendants seek summary judgment claiming they are entitled to qualified immunity because no constitutionally protected right preventing disclosure of the bank records was clearly established at the time of the seizure.

The court concludes no constitutional violation occurred. Even assuming, *arguendo*, such violation occurred, the individual defendants are entitled to qualified immunity. Since, the parties' arguments as to the third claim for relief are entwined, the court will evaluate the claim under the framework for the doctrine of qualified immunity. "When performing discretionary functions, government officials generally are shielded from civil liability as long 'as their conduct does not violate clearly established statutory or constitutional rights of

---

[2] In its relevant part the policy provides:
Police employees may be required to submit to the following tests or examinations deemed necessary to resolve an issue or allegation when those tests or examinations are material to a particular Internal Affairs investigation being conducted by the Police Department:
1.  A medical or laboratory examination . . .
2.  An employee may be requested to be photographed.
3.  An employee may be requested to participate in a line-up.
4.  *An employee may be requested to submit to a financial disclosure statement.*
**See** Filing No. 30, Cavanaugh's Aff. at ¶ 6 and Ex. G § VI(A).

which a reasonable person would have known.'" ***Avalos v. City of Glenwood***, 382 F.3d 792, 798 (8th Cir. 2004) (**quoting *Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982)). "When analyzing qualified immunity, courts conduct a two-part inquiry." ***Id.*** "The court must first consider the threshold inquiry of whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the defendants' conduct violated a constitutional right." ***Id.*** (**citing *Saucier v. Katz***, 533 U.S. 194, 201 (2001)). If a violation could be established on the alleged facts, the second inquiry is whether the right was clearly established at the time the violation occurred. ***Id.*** The court looks first to the alleged constitutional violation.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . ." United States Constitution, Amendment IV. The Fourth Amendment is applied to the states and state actors, through the Fourteenth Amendment. ***Elkins v. United States***, 364 U.S. 206, 213 (1960). The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures,'" ***United States v. Jacobsen***, 466 U.S. 109, 121 (1984), and requires that both be reasonable. ***City of Indianapolis v. Edmond***, 531 U.S. 32, 36 (2000). A search or seizure implicates the Fourth Amendment if it interferes with either a possession or a privacy interest. ***Jacobsen***, 466 U.S. at 121-22. A seizure can be subject to the Fourth Amendment even if no search occurred. ***Lesher v. Reed***, 12 F.3d 148, 150 (8th Cir. 1994). Although there is a preference expressed in the Fourth Amendment that searches and seizures, to be reasonable, be sanctioned by the issuance of a warrant by a neutral and detached judicial officer, **see *Johnson v. United States***, 333 U.S. 10, 14 (1948), the Supreme Court has made it clear that not all searches and seizures need to be authorized by a warrant issued upon probable cause. **See *Veronia Sch. Dist. 47J v. Acton***, 515 U.S. 646, 653 (1995).

One exception to the warrant requirement carved out by the Supreme Court is found "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" ***Griffin v. Wisconsin***, 483 U.S. 868, 873 (1987) (**quoting *New Jersey v. T.L.O.***, 469 U.S. 325, 351 (1985)). For instance, "special

needs" have been found to justify a public employer's search of an employee's desk. **See O'Connor v. Ortega**, 480 U.S. 709 (1987). In **O'Connor**, the Supreme Court held "that public employer intrusions on the constitutionally protected privacy interests of government employees for non-investigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under the circumstances." **Id.** at 725-26. The government cannot coerce a public employee into relinquishing constitutional guarantees by threatening job loss if they refuse. **Uniformed Sanitation Men Ass'n, Inc. v. Comm'r of Sanitation**, 392 U.S. 280, 284-85 (1968).

The court must first determine if the Fourth Amendment is implicated in this case. In general, seizure of property belonging to a public employee can be the subject of the Fourth Amendment. **O'Connor**, 480 U.S. at 715; **Lesher**, 12 F.3d at 150-51. In this case, Westbrook contends that he is entitled to summary judgment because, as a matter of law, defendants violated his Fourth Amendment rights when they obtained his bank records, by violating both his possessory right and his privacy right to his bank records. He argues that his private papers, not in possession of the bank, are protected by Congress under the Federal Right to Financial Privacy Act, 12 U.S.C. § 3401. The defendants, on the other hand, contend that summary judgment is proper in their favor because obtaining the bank records from Westbrook did not constitute a Fourth Amendment violation. To support their argument, defendants rely on two cases: **O'Connor** and **Best v. Johnson**, No. 4:03CV00841 JLH, 2004 WL 2301233 (E.D. Ark. Oct. 8, 2004).

In **O'Connor**, the Supreme Court considered the constitutionality of a state hospital administrator's search of a doctor's desk and file cabinets pursuant to an investigation into noncriminal work-related misconduct. **O'Connor,** 480 U.S. at 712-13. The Supreme Court stated that a standard of reasonableness under the circumstances, as opposed to the warrant requirement, should be employed in internal disciplinary investigations of governmental employees by the employer. **Id.** at 725-26.

In the case of **Best v. Johnson**, an unpublished district court opinion[3] upon which the defendants rely, the district court considered the constitutionality of a police

---

[3] The court notes that an unpublished opinion carries no precedential weight.

9

department's request for bank records made to the bank of a police officer pursuant to an internal investigation into noncriminal work-related conduct.  See *Best*, 2004 WL 2301233, at *1-2.  The district court noted that "[t]he Right to Financial Privacy Act does not nor could it create a constitutional expectation of privacy for purposes of the Fourth Amendment." *Id.* at *3.  The court notes that these rights are statutory, not constitutional.  The district court concluded that no constitutional violation existed because the police department obtained the records from the bank, and those records constituted the bank's business records. *Id.* at *4-5.

In the instant case, however, defendants obtained the records from Westbrook, not the bank.  In cases involving seizures, the crucial question to justify the absence of a warrant or probable cause is "whether the investigation's objective is to discipline the officer within the department or to seek criminal prosecution."  See *Cerrone v. Brown*, 246 F.3d 194, 200 (2nd Cir. 2001); *United States v. Taketa*, 923 F.2d 665, 675 (9th Cir. 1991).

"Men and women do not surrender their freedoms when joining the police force." *Driebel v. City of Milwaukee*, 298 F.3d 622, 637 (7th Cir. 2002); see *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967).  However, "nothing in the Fourth Amendment endows public employees with greater workplace rights than those enjoyed by their counterparts in the private sector." *Driebel*, 298 F.3d at 637.  "Thus, in cases involving the constitutional rights of police officers, courts must distinguish between a police department's actions in its capacity as an employer and its actions as the law enforcement arm of the state." *Id.* at 637-38 (citing cases).  Information obtained during a criminal investigation can be used in an internal investigation, but information in an internal investigation cannot be used in a criminal prosecution absent a waiver of Fifth Amendment rights. *Id.* at 635 n.5, 638 n.8.  As stated in *Myers v. Baca*:

> However, while the Fourth Amendment has been held to apply to governmental conduct outside the realm of law enforcement, "the types of non-law enforcement conduct to which the [Supreme] Court has extended the scope of the amendment are. . . typically motivated by some sort of investigatory or administrative purpose designed to elicit a benefit for the government." *United States v. Attson*, 900 F.2d 1427, 1430 (9th Cir. 1990).  Therefore, in order for non-law enforcement

> governmental conduct to be considered a search or seizure under the Fourth Amendment, such conduct must have "as its purpose the intention to elicit a benefit for the government in either its investigative or administrative capacities." *Id.* at 1431.

*Myers v. Baca*, 325 F. Supp. 2d 1095, 1103 (C.D. Cal. 2004); **see also** *Biehunik v. Felicetta*, 441 F.2d 228, 231 (2d Cir. 1971) (holding police department's ordering an officer to appear in a line-up as part of an internal investigation for "administering disciplinary measures" based on "substantial public interest in ensuring the appearance and actuality of police integrity" was reasonable). As stated in *Biehunik*:

> The policeman's employment relationship by its nature implies that in certain aspects of his affairs, he does not have the full privacy and liberty from police officials that he would otherwise enjoy. So long as the actions of a policeman's superior remain within reasonable bounds, there can hardly be that affront to expectations of personal autonomy which marks the state's coercive power in the typical arrest case. Thus that plaintiffs are not only citizens protected by the Constitution but also policemen is relevant in two respects. Their status both heightens the public interest served by the planned lineup and lessens the adverse impact of the investigation on the plaintiffs' legitimate interest in personal autonomy. We should not, of course, be understood as suggesting that policemen will be required to tolerate invasions of their freedoms which are not reasonably related to the special considerations arising from their relationship of employment.

*Id.*

The court finds the conduct of the defendants in this case under these facts to be reasonable under *O'Connor*. Here, it is undisputed that Westbrook's criminal investigation began close in time to the investigation concerning his work-related misconduct. The police department initiated the internal investigation following a complaint by a citizen. The interview of the plaintiff led to more questions. The plaintiff offered information about where he might have obtained the gambling money--from his ATM. The City ordered the plaintiff to turn over documentation to prove the origination of the funds, pursuant to its internal policy. The order was initialed by Chief of Police Pepin, Lieutenant Cavanaugh for internal affairs, and Lieutenant Buske of the Criminal Investigation Bureau. The court finds that

such a request for documentation is reasonable to determine whether the plaintiff had taken money from the citizen complainant.  The court further concludes that based on the evidence presented, the information gleaned during the internal investigation was not shared with those conducting the criminal investigation nor was it shared with the city or county prosecutors.  Therefore, the investigations were not entangled.  The order requiring bank records benefitted non-law enforcement purposes only.

Even if the court concluded that a constitutional violation existed, it would conclude that the defendants were entitled to qualified immunity from suit.   The second prong, whether the constitutional right was clearly established, weighs in favor of the defendants.  There exists a police department policy that requires financial records to be turned over to the internal affairs investigators.  There has been no showing that such records are used in the criminal investigations.  The law does not clearly prohibit internal investigations.  In fact, a substantial public interest exists in allowing an internal investigation focusing on the allegations and defenses associated with a citizen complaint against a police officer.

Because the court finds no Fourth Amendment violation occurred, the plaintiff's motion for summary judgment must be denied.  For the same reason, the defendants' motion for summary judgment on the plaintiff's third claim for relief is granted.  Regardless, the individual defendants are entitled to summary judgment based on qualified immunity.  Upon consideration,

**IT IS ORDERED:**

1. The defendants' motion for summary judgment (Filing No. 28) is granted.

2. The plaintiff's amended motion for partial summary judgment with respect to Claim III (Filing No. 31), the Fourth Amendment violation claim for obtaining his bank records, is denied.

DATED this 3rd day of March, 2006.

                                                            BY THE COURT:

                                                            s/Thomas D. Thalken
                                                            United States Magistrate Judge